**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOSE HERNANDEZ,                                          Case No.:

    Plaintiffs,

v.

PSAN PI/WD TRUST d/b/a THE TAKATA AIRBAG
TORT COMPENSATION TRUST FUND, and
BRAMAN IMPORTS, INC. d/b/a BRAMAN
HONDA,

    Defendants.
_____/

## DEFENDANTS' NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

Pursuant to 28 U.S.C. §§ 1332(a)(1), 1441 and 1446(b)(1), and Fed. R. Civ. P. 81(c), Defendants, PSAN PI/WD Trust d/b/a The Takata Airbag Tort Compensation Trust Fund ("TATCTF"), and Braman Imports, Inc. d/b/a Braman Honda (collectively "Defendants"), remove to this Court the action that Plaintiff filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. In removing, Defendants reserve all rights and defenses.

### I.  FACTUAL BACKGROUND

#### A.  The Defective Takata Airbag Inflator and Applicable Safety Recall

1. On December 13, 2020, Plaintiff Jose Hernandez was operating his 2005 Honda Civic (VIN: 1HGEM225X5L012131) (the "subject vehicle") in Miami, Florida, when he was involved in a crash. The driver's side front airbag in the subject vehicle contained a defective Takata airbag inflator that caused the airbag module to rupture in the crash. Metal fragments from the inflator struck Plaintiff causing personal injuries.

2. On June 24, 2014, American Honda Motor Co., Inc. ("Honda") initiated a regional safety recall (NHTSA Recall 14V-351) after it determined that a safety defect may exist in Honda vehicles equipped with a Takata airbag inflator in certain Honda vehicles sold or ever registered in high absolute humidity states, including Florida. The subject vehicle was included in this 2014 recall. Braman Honda learned for the first time that there may be a defective Takata airbag inflator

in the subject vehicle when it received notice on the June 24, 2014, of Safety Improvement Campaign NHTSA No. 14V-351 from Honda.  (**Ex. A** – Diaz Declr., ¶6).  Braman Honda was not asked to notify prior, current, or future owners of the subject vehicle.

3. At no time did any owner or user of the subject vehicle request that Braman Honda repair or replace the defective Takata airbag inflator in the subject vehicle. At the time of the crash, the original Takata airbag inflator was in the subject vehicle despite being subject to Honda's open provision of a free recall repair for over five years at that point.

### B. Takata Bankruptcy and the Creation of the TATCTF

4. Takata's main U.S. subsidiary, TK Holdings Inc., and certain of its affiliates filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Defendant TATCTF, a Delaware Statutory Trust, is a fiduciary trust established pursuant to TK Holdings Inc.'s Plan of Reorganization, which was confirmed by the Bankruptcy Court on February 21, 2018, to compensate individuals who have been injured or suffered wrongful death caused by a malfunctioning Takata Airbag Inflator. The TATCTF remains subject to the jurisdiction of the Bankruptcy Court. The Bankruptcy Court appointed Professor Eric D. Green as the TATCTF Trustee. (**Ex. B** – Compl., ¶¶7-12; **Ex. C** – Confirmation Order and Plan); *see also* http://www.takataairbaginjurytrust.com/index (last accessed Jan. 20, 2023).

5. As part of the Joint Chapter 11 Plan of Reorganization and the Bankruptcy Court's Confirmation Order, American Honda Motor Co., Inc. ("Honda") has been released from any liability of any nature arising out of or relating to any Takata airbag inflator claims—all such claims against Honda are channeled to the TATCTF, where they are liquidated, resolved, and paid by the TATCTF.  (**Ex. C** – Fifth Amended Plan at 101).  The TATCTF exists to provide fair and reasonable compensation for individuals, including those injured in Honda vehicles, who sustain personal injuries caused by a defective Takata airbag inflator. The TATCTF was designed to provide an efficient, out-of-court process to resolve claims of injured persons who suffer injuries from defective Takata airbag inflators. (**Ex. B** – Compl., ¶¶7-12).

6. The TATCTF has been operating since April 2018, and it has awarded millions of dollars to dozens of claimants like Plaintiff who have been injured by defective Takata airbag inflators installed in their Honda vehicles.

7. Because some claimants may not be satisfied with the valuation of their awards by the TATCTF, the TATCTF's governing documents (the "TDP") set forth an "opt out" process by which a claimant, like Plaintiff, may file a claim against the TATCTF in the tort system.

8. Plaintiff filed the underlying action (the "Complaint") on December 15, 2022, in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2022-023625-CA-(01).

9. Plaintiffs' Complaint seeks monetary damages from the TATCTF and Defendant Braman Imports Inc. d/b/a Braman Honda ("Braman Honda") for injuries allegedly suffered by Plaintiff, Jose Hernandez ("Plaintiff"), as a result of the rupture of the defective Takata airbag inflator in the underlying crash. (**Ex. B** – Compl. ¶¶38-39).

10. Pursuant to the TDP, the TATCTF will stipulate that the subject vehicle contained a defective Takata airbag inflator, that the inflator caused the airbag module to rupture, and that the rupture caused Plaintiff to suffer personal injuries. The TATCTF will not raise the statute of repose as a defense in this matter. The only issues that should be before this Court and/or a jury in this case are the identification of Plaintiff's injuries caused by the rupture and the value of those injuries. Simply put, any trial of this matter should be limited to issues related to injury causation and damages. (**Ex. D** – TDP §6.4). Accordingly, there was never a need for Plaintiff to address any repose or tolling issues in his Complaint (or to include any Defendant other than the TATCTF) because the TATCTF—standing in the shoes of the manufacturer—acknowledges liability and is prepared to address the only issue actually remaining for litigation: the proper amount of Plaintiff's recoverable damages resulting from the rupture of the airbag module.

11. There is no valid claim of independent liability on the part of the dealership. Plaintiff has unnecessarily complicated this damages-only dispute by including additional issues and an additional Defendant (Braman Honda), all of which are irrelevant to the limited damages-only issue remaining to be litigated. As detailed here, Plaintiff did so for one reason—to inject an irrelevant, non-diverse Defendant solely to deprive this Court of otherwise-existing diversity jurisdiction.

### C. Fraudulent Joinder of Dealership Braman Honda

12. Braman Honda is not a proper defendant in this action and must be dismissed. Given the unique circumstances here—involving a decades-old vehicle, a pre-accident 2014 manufacturer-initiated NHTSA recall, and a fiduciary Trust, which stands in the manufacturer's

3

shoes and was established to compensate claimants like Plaintiff—there is no reasonable possibility that Plaintiff will establish liability against Braman Honda under Florida law. Thus, Braman Honda has been fraudulently joined. Consequently, this Court should dismiss all claims against Braman Honda and ignore the dealership's citizenship for purposes of a diversity-jurisdiction determination.

13. It is undisputed that Braman Honda sold the subject vehicle on October 31, 2004—a decade prior to the safety recall; Braman Honda did not sell the subject vehicle to Plaintiff; Braman Honda has never had any contact or dealings with the Plaintiff; Braman Honda did not learn that the subject vehicle may be defective until it received notice of the June 2014 recall; and no owner or user of the subject vehicle brought the vehicle to Braman Honda for repair related to the recall or for any reason after the recall was issued. (**Ex. A** – Diaz Declr., ¶¶4-7).

14. On October 31, 2004, Braman Honda made the original sale of the subject vehicle to a customer that was not Plaintiff. Braman Honda had no knowledge at the time of sale that the subject vehicle was equipped with a defective Takata driver's side airbag inflator. (*Id.* ¶4).

15. On November 5, 2020, Plaintiff purchased the subject vehicle from a private third party. (**Ex. E** – Registration).

16. On December 13, 2020, approximately six weeks after purchasing the vehicle, Plaintiff was injured when the subject vehicle's Takata airbag inflator ruptured during the underlying crash.

17. On April 5, 2022, Plaintiff submitted a claim to the TATCTF seeking compensation for the injuries that he allegedly sustained as a result of the Takata airbag inflator defect. The Trustee awarded Plaintiff compensation in excess of $75,000 on July 20, 2022. Plaintiff appealed the valuation of his claim through the TDP's appeal process. Plaintiff notified the Trust on December 6, 2022 that he would exercise his right to "opt out" of the TATCTF process and file a complaint in the appropriate jurisdiction of law. (**Ex. D** – TDP §6.4).

18. Plaintiff filed the Complaint on December 15, 2022, against the TATCTF and Braman Honda.

## II.  THE COMPLAINT

19. There is no reasonable possibility that Plaintiff can recover against non-manufacturer Braman Honda, and thus, Braman Honda was fraudulently joined, and its citizenship should be ignored for purposes of determining diversity jurisdiction.

20. The Complaint alleges strict liability and negligence claims against Braman Honda. Specifically, Plaintiff alleges the following claims against Braman Honda: (1) a strict-liability claim for placing the subject vehicle equipped with a defective Takata airbag inflator into the stream of commerce at the time of its sale in October 2004 (Count II); (2) a negligence claim for failing to adequately warn, test, and assure the quality of the subject vehicle (Count III); and (3) a negligence claim for "negligent performance of recall" for failing to warn Plaintiff in 2015 that a recall had been issued for the subject vehicle (Count IV).

21. The Complaint alleges a claim for strict liability against the TATCTF pursuant to the terms of the TDP. (**Ex. D** – TDP §6.4(a) (providing that all claims made by Plaintiff against the TATCTF in the tort system "shall be based on strict liability only and that neither Plaintiff nor the TATCTF shall assert any claims or defenses based in negligence").

22. There is no reasonable possibility that Plaintiff will recover against Braman Honda under his "negligent performance of recall" claim. There is no Florida appellate precedent recognizing such a claim against a dealership. There is no Florida appellate precedent imposing a legal duty on a dealership such as Braman Honda to seek out and notify an individual who did not purchase the subject vehicle from the dealership, did not own the subject vehicle at the time of the recall, did not bring the vehicle to the dealership for repair, and did not purchase the subject vehicle until five years after the manufacturer issued its applicable recall.

23. Under federal law, vehicle manufacturers (not dealers) initiate National Highway Traffic Safety Administration ("NHTSA") product recalls and send NHTSA recall-notification communications to registered vehicle owners. The vehicle owner can then choose any authorized dealer that they prefer to perform a recall repair. *See* 49 U.S.C. §§ 30118(c), 30119 (requiring manufacturers to provide recall notifications); 49 U.S.C. § 30120(a)(1) ("the manufacturer of the defective or noncomplying motor vehicle or replacement equipment shall remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy"); 49 C.F.R. §§ 573.1-573.16 (NHTSA implementing regulations).

24. Similarly, there is no reasonable possibility that Plaintiff can recover against Braman Honda under his strict-liability or negligence theories. Florida's applicable statute of repose, section 95.031(2)(b), Florida Statutes, bars all of Plaintiff's state-law products claims against Braman Honda.

25. Because there is no reasonable possibility that Plaintiff can establish a cause of action against the resident defendant, Braman Honda, the dealership's citizenship must be ignored when making a diversity-jurisdiction determination.

### III. REMOVAL IS TIMELY

26. This Notice of Removal is filed within thirty (30) days of the date of service of the last-served Defendant, the TATCTF, and co-Defendant Braman Honda consents to removal. Therefore, this Notice is timely pursuant to 28 U.S.C §1446(b). *See Jones v. Commonwealth Land Title Ins. Co.*, 459 F. App'x 808, 810 (11th Cir. 2012) ("each defendant has thirty days from the date of formal service of process to file a notice of removal"); *Bailey v. Janssen Pharm., Inc.*, 536 F.3d 1202, 1209 (11th Cir. 2008) ("We hereby adopt the last-served defendant rule, which permits each defendant, upon formal service of process, thirty days to file a notice of removal pursuant to § 1446(b).").

### IV. VENUE IS PROPER IN THIS COURT

27. This Court is the United States District Court for the district and division in which the removed state-court action is pending. Accordingly, this Court is the appropriate venue for filing this Notice of Removal under 28 U.S.C. § 1446(a).

### V. GENERAL LAW REGARDING REMOVAL

28. Except where Congress provides otherwise, any civil action brought in a state court can be removed to the appropriate federal district court, so long as that federal district court has original jurisdiction. 28 U.S.C. § 1441(a). One type of original jurisdiction is diversity jurisdiction. 28 U.S.C. § 1332(a). Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and there is complete diversity of residency and/or citizenship among all parties. *Id.*

29. A civil action removable solely on the basis of diversity jurisdiction cannot be removed if any of the parties properly joined and served as defendants is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b)(2). However, courts routinely disregard the citizenship of fraudulently joined parties when determining whether diversity jurisdiction exists. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011); *Evelyne Petigny v. Wal-Mart Stores East, L.P.,* Case No. 18-23762-CIV-MORENO, ECF. No. 19, (S.D. Fla. November 14, 2018).

30. Fraudulent joinder occurs "[w]hen a plaintiff names a non-diverse defendant solely … to defeat federal diversity jurisdiction. [In such a situation], the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Stillwell*, 663 F.3d at 1332 (quoting *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)).

31. To establish fraudulent joinder, the removing defendant must prove by clear and convincing evidence "that either: (1) there is no [reasonable] possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell*, 663 F.3d at 1332 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)); *see also, e.g.*, *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) ("The potential for legal liability 'must be reasonable, not merely theoretical.'"); *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992). In considering possible state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.' *Braden v. Wyeth*, 2005 U.S. Dist. LEXIS 25243, CV-04-PT-235-E (N.D. Ala. June 30, 2005).").

32. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, <u>supplemented by any affidavits[/declarations] and deposition transcripts submitted by the parties</u>." *Berber v. Wells Fargo Bank, N.A.*, 760 F. App'x 684, 688 (11th Cir. 2019) (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998));[1] *see also Legg*, 428 F.3d at 1322 (same).

33. In this regard, the fraudulent-joinder analysis is akin to addressing a summary-judgment motion. *See, e.g.*, *Legg*, 428 F.3d at 1322-23 ("The proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56[.]" (internal citation and quotation marks omitted)). The Court resolves factual controversies in the non-movant's favor "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* at 1323 (holding that no question of fact existed where plaintiffs failed to submit evidence to dispute sworn statement by defendant supporting fraudulent joinder).

---

[1] All emphasis is supplied unless otherwise noted.

34. Where a removing defendant's sworn statements are undisputed, the Court may not "resolve the facts in the [plaintiff's] favor solely on the unsupported allegations in the … complaint." *Legg*, 428 F.3d at 1323. Instead, absent contrary evidence opposing fraudulent jointer, the Court will not "assume that the [opponent] could or would prove the necessary facts." *Id.*

35. A defendant who is fraudulently joined is entitled to dismissal. *See Dumas v. ACCC Ins. Co.*, 349 F. App'x 489, 491 (11th Cir. 2009) (affirming district court's dismissal of fraudulently joined defendant with prejudice on the grounds that where the defendant has shown fraudulent joinder, "then the district court must dismiss the non-diverse defendant and deny the motion to remand"); *Whitney v. Esurance Ins. Co.*, 2013 WL 4028151, 2013 U.S. Dist. LEXIS 111210, at *4 (S.D. Fla. Aug. 7, 2013) (granting motion to dismiss for fraudulent joinder and denying motion to remand as moot).

## VI.   DIVERSITY OF CITIZENSHIP

36. This is a civil action over which the Court has original jurisdiction under 28 U.S.C. § 1332, and is one that may be removed to this Court under 28 U.S.C. §§ 1441 and 1446 based on diversity of citizenship.

### A. Citizenship of Plaintiff

37. Plaintiff is a citizen, resident, and domiciliary of Florida. (**Ex. B** – Compl., ¶22). Accordingly, he is a Florida citizen for diversity purposes. *See, e.g.*, *Grant v. Pottinger-Gibson*, No. 0:15-cv-61150-KMM, 2017 U.S. Dist. LEXIS 111695, at *9 (S.D. Fla. July 17, 2017).

### B. Citizenship of Defendants

38. The TATCTF is not a citizen of Florida for diversity purposes. In conducting a diversity analysis, the citizenship of a traditional fiduciary trust such as the TATCTF is determined based on the citizenship of the trustee(s). *See Alliant Tax Credit 31, Inc v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019) (observing that for purposes of diversity jurisdiction, a "traditional trust holds the citizenship of its trustee." (internal quotations and citations omitted; emphasis in original). Neither Trustee Eric. D. Green, nor the TATCTF's Trustee solely for the purposes of Section 3807 of Title 12 of the Delaware Code (12 DE Code § 3807), is a Florida citizen. The TATCTF's statutory trustee is located in Delaware, and Eric D. Green is based in Concord, MA, and therefore not a Florida domiciliary. (**Ex. C** – Confirmation Order and Plan); *see also*

http://www.takataairbaginjurytrust.com/index; http://www.takataspecialmaster.com/about; https://www.acctm.org/egreen/ (last accessed Jan. 20, 2023). Further, Plaintiff makes no allegation that TATCTF is a citizen of Florida. To the contrary, conceding the non-diversity of the TATCTF, Plaintiff relies on the Florida long-arm statute to satisfy the requirements of personal jurisdiction. (**Ex. B** – Comp. ¶27).

39. Defendant Braman Honda is a Florida entity with its principal place of business in Florida. However, Plaintiff has no reasonable basis for recovery against Braman Honda, and Braman Honda has thus been fraudulently joined. Therefore, this Court must ignore Braman Honda's citizenship when conducting its diversity analysis. *See, e.g.*, *Epstein v. Gilead Scis., Inc.*, 441 F. Supp. 3d 1277, 1280 (S.D. Fla. 2020) (when "a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court").

### C. Complete Diversity Between the Parties Exists Because Braman Honda Was Fraudulently Joined to Defeat Diversity Jurisdiction

#### 1. Florida Law Imposes No Duty on Braman Honda to Conduct a Recall of the Subject Vehicle.

40. The TATCTF has been unable to locate any Florida appellate precedent imposing a duty on a dealership to conduct a vehicle safety recall. Federal law requires vehicle manufacturers to initiate and conduct NHTSA safety recalls. This duty includes the requirement to send recall-notification communications to registered vehicle owners. *See* 49 U.S.C. §§ 30118(c), 30119 (requiring manufacturers to provide recall notifications); 49 U.S.C. § 30120(a)(1) ("the manufacturer of the defective or noncomplying motor vehicle or replacement equipment shall remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy"); 49 C.F.R. §§ 573.1-573.16 (NHTSA implementing regulations).

41. Neither federal law nor Florida state law imposes any such legal duty on Braman Honda, an independent dealership. Plaintiff did not purchase the subject vehicle from Braman Honda, and there is no evidence that any owner of the 2005 Honda Civic ever brought it into Braman Honda for the recall repair. (**Ex. A** – Diaz Declr., ¶¶5-6). Tacitly acknowledging the absence of any legal duty, Plaintiff asserts that "Honda instructed Braman Honda to search for and find the owners and users of the recalled vehicles, including Mr. Hernandez's subject Honda vehicle." (**Ex. B** – Comp. ¶120). Even assuming that assertion is true, Honda's alleged instructions

to its dealership does not create a legal duty. Moreover, Plaintiff was not the owner of the subject vehicle at the time of the recall. He did not purchase the vehicle from a private third party until November 2020, more than five years after the recall was issued.

42. The absence of any valid claim for negligent performance of a recall against Braman Honda is consistent with the Middle District of Florida's memorandum order in *Mincey v. Am. Honda Motor Co.*, No. 3:15-cv-847-J-39MCR, 2015 U.S. Dist. LEXIS 189411, at *15-16 (M.D. Fla. Aug. 25, 2015). In *Mincey*, the district court concluded that there was a reasonable possibility that a Jacksonville-area Honda dealer could be liable under plaintiff's "negligent failure to repair" theory because that dealership—unlike Braman Honda—in fact **inspected and replaced the recalled airbag inflator** involved there. The Court concluded that, under those distinct circumstances not at issue here—in which the dealership inspected, repaired, and replaced the recalled airbag inflator—the plaintiff could arguably state a claim in negligence for the alleged negligent repair of the vehicle actually undertaken by that dealer.

43. Nothing of the sort occurred here. The Complaint makes no allegation that Braman Honda repaired the vehicle's airbag inflator pursuant to a recall and did so negligently. Indeed, it is indisputable that no vehicle owner ever brought the subject vehicle to Braman Honda for a repair or recall repair of the subject airbag inflator. Plaintiff's claim rests solely on his novel, unprecedented legal theory that Braman Honda had a duty to Plaintiff to "search for and find the owners and users of recalled vehicles." (**Ex. B** – Compl., ¶120). Federal law imposes that duty on vehicle manufacturers, not dealers, and Florida law imposes no such duty on a dealer. Accordingly, Plaintiff fails to alleged any viable claim against Braman Honda.

   2.   **Florida's Applicable Statute of Repose Bars all of Plaintiff's Claims Against Braman Honda.**

44. Plaintiff has no reasonable possibility of recovery against Braman Honda because Florida's applicable statute of repose—Florida Statutes section 95.031(2)(b)—bars all Florida state-law products claims asserted against Braman Honda.

45. It is undisputed that the subject vehicle is a 2005 model year Honda Civic that was sold on October 31, 2004. (**Ex. A** – Diaz Declr., ¶¶3-4; **Ex. B** – Compl. ¶1). The subject vehicle was at least 16 years old at the time of Plaintiff's December 13, 2020 accident. Florida's statute of repose provides:

> Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damage caused by a product, to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than **12 years** after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product.

Fla. Stat. § 95.031(2)(b).

46.   The statute's tolling provision does not concern dealerships, and thus, is inapplicable to Braman Honda. The tolling provision provides:

> (d) The repose period prescribed within paragraph (b) is tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect. Any claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support.

Fla. Stat. § 95.031(2)(d).

47.   As a threshold matter, there is no basis under Florida law to apply the tolling provision to a non-manufacturer party.[2] Unsurprisingly, contrary to Plaintiff's novel approach and consistent with the plain statutory text, Florida state and federal case law applying the "concealment" tolling exception has done so vis-à-vis product manufacturers only. Undersigned counsel have been unable to locate any Florida precedent applying this repose tolling provision to non-manufacturers such as Braman Honda. *See Stimpson v. Ford Motor Co.*, 988 So. 2d 1119, 1120-21 (Fla. 5th DCA 2008) (applying tolling to the vehicle manufacturer—Ford Motor Co.—because Ford allegedly concealed a defect causing plaintiffs' minivan to suddenly accelerate); *Romero v. Toyota Motor Corp.*, 916 F. Supp. 2d 1301, 1308-14 (S.D. Fla. 2013) (providing a "concealment" analysis regarding the vehicle's manufacturer—Toyota—regarding an alleged roof defect); *Avila v. Isuzu Motors Am., LLC*, No. 08-23544-CIV-MORE, 2009 U.S. Dist. LEXIS 132436, at *1-8 (S.D. Fla. Aug. 31, 2009) (tolling the repose period as to manufacturers—

---

[2] In addition, Plaintiff's allegations of Honda's prior knowledge of a defect are mistaken; that said, diversity jurisdiction is proper here without ever needing to address that point in this Notice of Removal. By not addressing that point here, Defendants in no way concede Plaintiff's unfounded allegations of Honda's asserted prior knowledge of a defect.

11

defendants Isuzu Motors America, LLC and Isuzu Motors, Ltd.—which concealed a defect in the vehicle's front passenger seat). Braman Honda has a vested substantive right to proper application of Florida's applicable statute of repose. *Cf. Firestone Tire & Rubber Co. v. Acosta*, 612 So. 2d 1361, 1363-64 (Fla. 1992) (holding that products-liability defendants had a vested right to application of a prior version of this statute of repose, which the Legislature repealed after the statute's terms had already been fulfilled).

48. Moreover, contrary to Plaintiff's conclusory, unsupported allegations, the only evidence is that Braman Honda had no actual knowledge of a defect in the subject vehicle's driver's side airbag inflator prior to Honda's 2014 NHTSA recall, nor did Braman Honda actively conceal any alleged defect. (**Ex. A** – Diaz Declr., ¶6). As such, tolling the statute of repose as to Braman Honda would also be contrary to the purpose of the tolling exception, which is to toll as to a defendant who intentionally conceals information.

49. When analyzing fraudulent joinder, the Court may not "resolve the facts in the [plaintiff's] favor solely on the unsupported allegations in the [plaintiff's] complaint" if the removing defendant's sworn statements are undisputed. *Legg*, 428 F.3d at 1323. Instead, absent contrary evidence opposing fraudulent jointer, the Court will not "assume that the nonmoving party could or would prove the necessary facts." *Id.* (internal quotations and citations omitted); *see also, e.g.*, *Espinoza v. Target Corp.*, No. 9:19-cv-81108, 2019 U.S. Dist. LEXIS 162640, at *5 (S.D. Fla. Sep. 23, 2019) ("While a court ruling on fraudulent joinder must resolve a factual dispute in the plaintiff's favor, a factual dispute exists 'only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" (quoting *Legg*, 428 F.3d at 1322-23)). Plaintiff's attempt to impute the alleged knowledge of Honda to Braman Honda likewise fails as a matter of law. It is nonsensical, contrary to the clear intent of the statute, and has no basis or recognition in Florida law. Braman Honda is an independent vehicle dealership. It is not a managing agent of Honda, and Plaintiff makes no such allegation.

50. Finally, Plaintiff's contention that Plaintiff reasonably relied on Braman Honda's alleged misrepresentations and/or active concealment of facts is demonstrably false. Plaintiff had no dealings whatsoever with Braman Honda, and the existence of a potentially defective Takata inflator in the subject vehicle was publicly disclosed in June 2014—six years before Plaintiff's purchase of the subject vehicle and his accident.

51. Florida precedent and Mr. Diaz's declaration demonstrate that Plaintiff has no

reasonable basis to toll the statute of repose vis-à-vis Defendant Braman Honda. Per Mr. Diaz's unrebutted declaration, Braman Honda had no prior knowledge regarding a defect in the subject 2005 Honda Civic's driver's side airbag, never concealed this alleged defect, and lacked knowledge of any alleged defect affecting the subject vehicle's Takata driver's side airbag inflator until Honda <u>publicly issued</u> the applicable recall notice in June 2014—well before Plaintiff's late-2020 vehicle purchase and accident. (**Ex. A** – Diaz Declr., ¶6).

52. Braman Honda had no actual knowledge and concealed nothing, and Florida's statute of repose bars all of Plaintiffs' claims against Braman Honda, including the "negligent performance of recall" claim. Because there is no reasonable potential for liability against Braman Honda, this Court should find that Braman Honda was fraudulently joined, ignore it for purposes of diversity jurisdiction, and dismiss Braman Honda from the case. *See, e.g.*, *Legg*, 428 F.3d at 1325 n.5 ("The potential for legal liability 'must be reasonable, not merely theoretical.' *Great Plains Trust Co v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992). In considering possible state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.' *Braden v. Wyeth*, 2005 U.S. Dist. LEXIS 25243, CV-04-PT-235-E (N.D. Ala. June 30, 2005).").

53. Further, as stated above, there was never a need for Plaintiff to address any repose or tolling issues in his Complaint (or to include any Defendant other than the TATCTF) because TATCTF acknowledges liability and is prepared to address the only issue actually remaining for litigation: the proper amount of Plaintiff's recoverable damages resulting from the rupture of the airbag module. Plaintiff has thus unnecessarily complicated this damages-only dispute by including additional issues and an additional Defendant (Braman Honda), all of which are irrelevant to the limited damages-only issue remaining to be litigated. As detailed here, Plaintiff did so for one reason—to inject an irrelevant, non-diverse Defendant solely to deprive this Court of otherwise-existing diversity jurisdiction.

### 3. The Amount in Controversy Has Been Satisfied

54. District Courts "may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am.*, 613 F.3d 1058, 1062 (11th Cir. 2010). In doing so, judges may make

"reasonable inferences" from the pleadings to ascertain whether the amount-in-controversy requirement is satisfied. *Id*. A review of the economic and non-economic damages alleged in the Complaint establishes that the amount in controversy exceeds $75,000.00. "Complaints alleging serious, lasting physical injuries are typically removable because it is facially apparent that these claims are worth more than $75,000." *Hickerson v. Enterprise Leasing Co.*, 818 Fed. App'x 880, 883 (11th Cir. 2020).

55. In addition, as specified in paragraph 17 above, it is undisputed that Plaintiff rejected the Trustee's confidential July 20, 2022 award, which was in excess of $75,000. *Cf., e.g.*, *Katz v. J.C. Penney Corp.*, No. 09-CV-60067, 2009 WL 1532129, 2009 U.S. Dist. LEXIS 51705, at *4 (S.D. Fla. June 1, 2009) ("pre-suit settlement offers and demands may be considered in evaluating whether a case has been properly removed."). Plaintiff did not institute this lawsuit to seek less compensation than that already specified by the Trustee.

## VII. FILING OF REMOVAL PAPERS

56. Under 28 U.S.C. § 1446(d), contemporaneous to the removal of this action, Defendants have provided written notice of removal to Plaintiff's counsel by filing a Notice of Filing the Notice of Removal with the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. A true and correct copy of that state-court Notice of Filing is attached as **Exhibit F**.

57. Further, as required by 28 U.S.C. § 1446(a), copies of process, pleadings, and orders served on Defendants in the removed action are attached here as **Exhibit G.**

## VIII. CONCLUSION

For these reasons, Defendants, respectfully remove this action from the Eleventh Judicial Circuit for Miami-Dade County, Florida, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446. Should any question arise as to the propriety of this removal, Defendants respectfully request an opportunity to provide further briefing in reply and oral argument.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Attorneys for Defendants*
The Alhambra
2 Alhambra Plaza, Suite 1110
Coral Gables, Florida 33134
Telephone: 786.353.0210
Facsimile: 786.513.2249

> BY: /s/ *David L. Luck*
> TODD R. EHRENREICH
> FBN 945900
> todd.ehrenreich@lewisbrisbois.com
> DAVID L. LUCK
> FBN 41379
> david.luck@lewisbrisbois.com
> TROY P. CUNNINGHAM
> FBN 1020694
> troy.cunningham@lewisbrisbois.com

### CERTIFICATE OF SERVICE

WE CERTIFY that on January 20, 2023, we e-filed the foregoing document with the Clerk of the Court using CM/ECF. We also certify that the foregoing document is being served this day on all parties and counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF and via email to the parties on the service list below.

> /s/ *David L. Luck*
> DAVID L. LUCK
> FBN 41379

### SERVICE LIST

Andrew Parker Felix, Esq.
Steven E. Nauman, Esq.
Branden Weber, Esq.
MORGAN & MORGAN, P.A.
*Counsel for Plaintiff*
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
**SERVICE EMAIL**: Andrew@forthepeople.com; kdimeglio@forthepeople.com; snauman@forthepeople.com; bweber@forthepeople.com